10 CV 4848

Barbara Solomon (bsolomon@fzlz.com)
Craig S. Mende (cmende@fzlz.com)
Giselle C. Woo (gwoo@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
(212) 813-5900
*Attorneys for Plaintiff Estee Lauder Inc.*

JUDGE COTE

RECEIVED
JUN 22 2010
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x
                            :

ESTEE LAUDER INC.,            :

                 Plaintiff,    :      Civil Action No. _____

      v.                   :

                            :      **COMPLAINT**

LYNN LEUNG, NU HEALTH PRODUCT CO.,  :
and UBF GROUP, INC.,       :

                            :

                Defendants.  :
————————————————————————x

      Plaintiff Estee Lauder Inc., by its undersigned attorneys Fross Zelnick Lehrman & Zissu, for its Complaint against Defendants Lynn Leung, Nu Health Product Co., and UBF Group, Inc. (collectively, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

      1.     Plaintiff and its predecessors (collectively, "Estee Lauder") have marketed and sold cosmetics, skin care and fragrance products throughout the United States under the famous ESTEE LAUDER and ESTEE trademarks for decades. Plaintiff's ESTEE LAUDER and ESTEE branded goods are among the most popular and successful products in the cosmetics, skin care and fragrance market today, and the ESTEE LAUDER and ESTEE trademarks are among Plaintiff's most valuable assets.

{F0634304.4 }

2.      In 2009, after Plaintiff discovered and objected to Defendants' use and application to register the confusingly similar term L'ESTEE as a trademark for their own skin care products, Defendants entered into a settlement, undertaking to permanently cease all use of that mark.  However, Defendants, in blatant violation of the settlement agreement and Plaintiff's exclusive rights, have continued to engage in distribution and sale of skin care products under the infringing L'ESTEE trademark.

3.      This action, for breach of contract under New York State law, arises from Defendants' continued use of the L'ESTEE mark and their failure to abide by the express terms of the 2009 settlement agreement.  Plaintiff seeks specific performance and all relief provided for under the agreement, including destruction of all products and packaging bearing the infringing L'ESTEE mark, recovery of Defendants' profits or $25,000 in liquidated damages, and attorneys' fees incurred pursuing this claim, as well as additional damages and monetary relief as authorized by law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's claim pursuant to Section 1332 of the Judicial Code, 28 U.S.C. § 1332, because the matter in controversy is between citizens of different states and, upon information and belief, involves sums in excess of $75,000 exclusive of interest and costs.

5.      Venue is proper under 28 U.S.C. § 1391 because, upon information and belief, Defendants do business in this District and a substantial portion of the events at issue have arisen and will arise in this District, and because Defendants have consented to the jurisdiction of this Court.

## PARTIES

6.     Plaintiff is a Delaware corporation having its principal place of business at 767 Fifth Avenue, New York, New York 10153.  Plaintiff owns the federally registered ESTEE LAUDER and ESTEE trademarks and distributes and sells products under these marks throughout the United States.

7.     Upon information and belief, defendant Lynn Leung ("Leung") is an individual residing at 20875 Currier Road, Walnut, California 91789.  Leung is the sole owner, director, shareholder of and otherwise fully controls defendants Nu Health Product Co. and UBF Group, Inc.  Upon information and belief, Leung continues to sell skin care products bearing the infringing L'ESTEE mark in violation of the parties' settlement agreement.

8.     Upon information and belief, defendant Nu Health Product Co. ("Nu Health") is a California corporation doing business at 20875 Currier Road, Walnut, California 91789.  Upon information and belief, Nu Health continues to sell skin care products bearing the infringing L'ESTEE mark in violation of the parties' settlement agreement.

9.     Upon information and belief, defendant UBF Group, Inc. ("UBF") is a California corporation doing business at 20875 Currier Road, Walnut, California 91789.  Upon information and belief, UBF continues to sell skin care products bearing the infringing L'ESTEE mark in violation of the parties' settlement agreement.

10.     Upon information and belief, the Defendants are acting in concert with each other in connection with advertising, promotion, sale and distribution of products bearing the L'ESTEE mark in violation of the parties' settlement agreement.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      Plaintiff's Business and ESTEE LAUDER and ESTEE Trademarks

11.     Plaintiff's business, founded by the U.S. cosmetics pioneers Estée and Joseph Lauder, has marketed and sold cosmetic and skin care products throughout the United States and elsewhere under the famous ESTEE LAUDER trademark since 1946.  Estee Lauder has also used the famous ESTEE trademark (together with ESTEE LAUDER, the "ESTEE Trademarks") for more than forty years.

12.     Today, Plaintiff continues to be one of the leading beauty product companies in the United States and around the world, offering a variety of upscale fragrance, skin care, and makeup products in the U.S. and over one hundred other countries.  All of the company's products – which include cosmetics, perfume, skin lotions, body creams, face cream, facial cleansers, gels, toners, and masks – bear the famous ESTEE LAUDER trademark.

13.     Plaintiff's products bearing the ESTEE Trademarks are sold in this District and throughout the United States in premiere department stores and specialty stores, and on the Internet through Plaintiff's *www.esteelauder.com* website.  With millions of dollars in annual sales, products sold under Plaintiff's ESTEE Trademarks are among the most popular cosmetics, skin care and fragrance products on the market today.

14.     Estee Lauder has spent millions of dollars advertising its ESTEE Trademarks and products, including through television, radio and print media, and the Internet.  Estee Lauder is known for its advertisements featuring iconic supermodels and actresses such as Karen Graham, Paulina Porizkova, Elizabeth Hurley and Gwyneth Paltrow, who have further enhanced the renown and goodwill associated with the ESTEE Trademarks.

15.     By virtue of Estee Lauder's extensive advertising, promotion, and sale of its products under the ESTEE Trademarks, these marks, individually and collectively, have become instantly recognizable to the public as exclusively denoting Plaintiff and its prestige line of products.  As a result of Estee Lauder's substantial efforts and investment, these marks are enormously valuable assets of Plaintiff, represent tremendous goodwill, and serve to identify and refer exclusively and uniquely to Plaintiff as the source of such products.

16.     Plaintiff also owns numerous federal trademark registrations for the ESTEE Trademarks, dating back as early as 1949.  These include, among many others:[1]

- U.S. Reg. No. 530,305* for ESTEE LAUDER for goods and services including skin lotion, face and eye creams, based on use in commerce since November 2, 1946;

- U.S. Reg. No. 3,217,192 for ESTEE LAUDER for goods and services including cleansers, exfoliators, moisturizers, masks for the face and body, eye, skin and body creams, and oils and gels for the face and body, based on use in commerce since November 2, 1946;

- U.S. Reg. No. 869,503* for ESTEE for perfume and toilet water, based on use in commerce since June 28, 1968; and

- U.S. Reg. No. 3,049,827 for ESTEE for goods and services including body lotion and body powder, based on use in commerce since June 28, 1968.

17.     Plaintiff's ESTEE Trademarks are extraordinarily valuable assets of the company, and Plaintiff will suffer irreparable harm if any other parties (including Defendants) are allowed to sell unauthorized skin care products bearing these marks or colorable imitations.

B.     Defendants' Prior Infringing Conduct and the 2009 Settlement Agreement

18.     Long after Estee Lauder commenced use of and registered its ESTEE Trademarks, Defendants, who are not authorized dealers or distributors of ESTEE LAUDER

---

[1] These registrations constitute evidence (and, for those bearing asterisks, which are incontestable under 15 U.S.C. § 1065, conclusive evidence) of Estee Lauder's ownership of and exclusive right to use the ESTEE Trademarks in connection with the identified goods as a matter of law pursuant to Sections 7(b) and 33 of the U.S. Trademark (Lanham) Act, 15 U.S.C. §§ 1057(b), 1115.  These registrations also placed Defendants on constructive notice of Estee Lauder's rights pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072.

products, began offering and/or distributing skin care products, including cleaners, creams, lotions and masks, under the mark L'ESTEE.  In addition, on May 19, 2009, defendant Leung filed a federal trademark application (Serial No. 77/740,788) to register L'ESTEE for various skin care products, including cleaners, creams, lotions, and other non-medicated skin care preparations, based on alleged first use in commerce in April 2009.[2]

19.     Plaintiff objected to Defendants' use of and application to register the L'ESTEE mark for skin care products on the ground that use of the mark on such products is likely to deceive consumers into believing that Defendants or their products were authorized by Estee Lauder.  On October 27, 2009, Defendants, individually and collectively, entered into a written agreement with Plaintiff (the "Settlement Agreement") to resolve Plaintiff's objections.  A true and correct copy of the Settlement Agreement is attached at **Exhibit A** hereto.

20.     In the Settlement Agreement, under which Defendants were granted a conditional release from claims for prior infringing conduct, Defendants agreed to permanently cease use of the L'ESTEE trademark or any other "Prohibited Term" – defined as "L'ESTEE, ESTEE, L'EST, EST (regardless of punctuation), the phonetic equivalent of the foregoing and any confusingly similar term, whether used alone, with other words, terms or symbols or as a prefix or suffix and any other mark, name or designation confusingly similar to the ESTEE LAUDER mark."  *See* Exh. A, ¶ 1.2.

21.     Specifically, Defendants agreed that by December 11, 2009 they would "permanently cease and forever desist from any and all use and any and all planned use of L'ESTEE as a trademark, product name, brand name or otherwise and shall permanently cease

---

[2] The application covered the following goods:  "Body and beauty care cosmetics; Cosmetic creams for skin care; Non-medicated skin care preparation, namely, body mist; Non-medicated skin care preparations [sic]; Non-medicated skin-care preparations, namely, creams, lotions, gels, toners, cleaners and peels; Pre-moistened cosmetic tissues; Private label cosmetics" in Class 3.

and forever desist from all use of any Prohibited Term including L'ESTEE on or in connection with: (a) any goods, business, or services including all cosmetics, skin care products, eye creams and any other products that had been offered for sale at www.lestee.com; (b) the provision of any goods, business or services; (c) any commercial purpose; (d) the advertising, marketing, sale, offering for sale, or promotion of any goods, business or services in any media now existing or hereinafter created, and (e) the placement or contracting for placement of any advertising." *See* Exh. A, ¶ 3.1.

22.     To ensure that Defendants ceased using the L'ESTEE mark, they were also required, by December 21, 2009, to "destroy all remaining inventory in [Defendants'] possession, custody or control of any products, packaging, jars, containers, labels, business materials, stationery, business cards, signage, brochures, presentations, proposals, letters, sales materials, invoices, flyers, postcards, letterhead, business stationery, business forms, business cards, marketing materials, advertising and promotional material, promotional goods, or other materials bearing the Prohibited [Terms]." *See* Exh. A, ¶ 3.5.

23.     To further protect the rights of Plaintiff, Defendants were required not to "apply to register, register, seek registration of, or maintain a registration in the United States Patent and Trademark Office, any foreign trademark office or any U.S. state trademark office for" L'ESTEE or another Prohibited Term. *See* Exh. A, ¶ 5.2.  And Defendants specifically represented that, other than defendant Leung's pending U.S. trademark application, which they were required to abandon, see Exh. A, ¶ 5.1, they "own[ed] no U.S. state, U.S. federal or foreign trademark or service mark applications or registrations for or including any Prohibited Term and no third party [was] holding any such applications or registrations for [Defendants] or on [Defendants'] behalf or on behalf of any business of [Defendants]." *See* Exh. A, ¶ 2.1(a).

31.     In recognition of the seriousness of these obligations, Defendants agreed that a breach of any of these requirements, or a breach of any of Defendants' other obligations under the Settlement Agreement, would entitle Estee Lauder, in any action brought to enforce the Agreement or to redress a material breach thereof, to:

- Entry of a temporary restraining order, preliminary and permanent injunction enjoining use of L'ESTEE and similar marks and prohibiting all conduct in breach of the Settlement Agreement;

- Recovery of all of its costs and attorneys' fees, including investigation fees incurred in connection with the discovery of the breach, obtaining evidence about the breach, taking action relating to the breach, and proving any breach;

- Recovery of all of Defendants' gross profits from the sales on any goods in violation of the Settlement Agreement or $25,000, whichever is greater; and

- Any other relief the Court deems appropriate, including monetary penalties for Defendants' breach of the Settlement Agreement and for violations of substantive law.

*See* Exh. A, ¶ 7.  Defendants also "expressly waive[d] any claims challenging the award of liquidated damages in lieu of profits and further acknowledge[d] that the amount set forth is reasonable under the circumstance."  *Id.*

C.     Defendants' Breach of the Settlement Agreement

32.     Defendants are knowingly violating their obligations under the Settlement Agreement.  Upon information and belief, Defendants are doing so in order to continue unfairly benefitting from Plaintiff's rights and goodwill in the ESTEE Trademarks.

33.     Upon information and belief, Defendants' have not complied with their obligation to cease all use of the L'ESTEE mark by December 11, 2009, and Defendants continue to order, receive and sell new shipments of L'ESTEE branded products.  Photographs of Defendants' products shipped from Defendants' address in May 2010 are attached hereto at **Exhibit B**.

34.     The package sent from Defendants' address in May 2010 included the following products and related packaging branded with the L'ESTEE mark:  L'ESTEE Roe Essentials Eyes Kit, L'ESTEE Cell Defenser Better Than BOTOX, L'ESTEE Levo C Whitening Brighten Mask, L'ESTEE Ultra Firming Eye Cream Bio-Performance, L'ESTEE Strawberry Polyphenols Nourish Repair Mask, L'ESTEE Whitening Enzyme Mask, L'ESTEE Roe Essentials Anti-Wrinkle Moisturizing Mask, L'ESTEE Roe Essentials Eye Treatment Kit, L'ESTEE Night Mask, L'ESTEE Deep Clean Detoxifying Oxygenation Mask, and L'ESTEE Intensive Whitening Mask.  *See* Exh. B.  This confirms that Defendants *did not* cease use of the L'ESTEE mark on products and product packaging, and *did not* destroy its inventory of products and product packaging bearing the L'ESTEE mark, as required under the Settlement Agreement.

35.     The package also contained sales and advertising materials, letterhead and business forms bearing the L'ESTEE mark, including a promotional flyer on L'ESTEE letterhead describing the "L'ESTEE ULTR [sic] FIRMING EYE CREAM BIO-PERFORMANCE" product in English, Chinese and Spanish, and several posters advertising the L'ESTEE Deep Clean Detoxifying Oxygenation Mask, the L'ESTEE Night Mask, and/or other L'ESTEE products.  Copies of some of these materials are attached at **Exhibit C** hereto.  This confirms that Defendants *did not* cease use of the L'ESTEE mark on promotional and other materials, and *did not* destroy its inventory of all such materials bearing the L'ESTEE mark, as required under the Settlement Agreement.

36.     In addition, defendant Nu Health was identified as recently as May 14, 2010 as a current wholesaler of L'ESTEE products.  These products have been described as "hot items" subject to "a lot of reorder."[3]

---

[3] Payments for the above-referenced order were made to defendant Nu Health; the return address for the shipment listed defendant UBF.

37.     In addition, Defendants made false representations and have brazenly violated

their obligation not to apply for registration of the L'ESTEE trademark.  In the Settlement

Agreement, Defendants represented that they owned no foreign trademark applications or

registrations for L'ESTEE, and agreed that they would not apply to register, register, or seek

registration of the L'ESTEE trademark in any foreign trademark office.  *See* Exh. A, ¶¶ 2.1(a),

5.2.  However, defendant Leung owned and continues to maintain an application to register the

L'ESTEE trademark with the Chinese Trademark Office – Application No. 6419194, filed on

December 5, 2007.  A printout from the Trademark Office, State Administration for Industry and

Commerce, People's Republic of China website (http://sbj.saic.gov.cn/english/search/search.asp)

evidencing this application is attached at **Exhibit D** hereto.  This application confirms both

Leung's knowingly false representation when she entered into the Settlement Agreement, and

her continuing violation of the Agreement.

38.     The foregoing conduct of Defendants has been in knowing and willful violation of

its obligations under the Settlement Agreement, and threatens great and irreparable harm to

Plaintiff.

### CLAIM FOR RELIEF  – 
### BREACH OF CONTRACT UNDER NEW YORK LAW

39.     Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint as if

fully set forth herein.

40.     The Settlement Agreement is a binding contract for which adequate consideration

was given, and all of Defendants' obligations under the Agreement remain in full force and

effect.

41.     Defendants have materially and willfully breached the Agreement, including by

continuing to trade in products bearing the L'ESTEE trademark, by failing to destroy all

inventory of products and other materials bearing the L'ESTEE trademark, and by first failing to disclose and then maintaining an application to register L'ESTEE as a trademark.

42.     Plaintiff has been and continues to be damaged by such conduct, in an amount to be determined at trial, and has also incurred significant costs and attorneys' fees as a result of such conduct.  Such conduct is also threatening immediate and irreparable harm for which Plaintiff has not remedy at law.

**WHEREFORE**, Plaintiff Estee Lauder respectfully demands judgment as follows:

A.     Ordering Defendants to comply with all of their obligations under the Settlement Agreement, and preliminarily and permanently enjoining Defendants, their employees, agents, licensees, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with any of them, including any entities controlled in whole or in part by any of Defendants or any entities created by any Defendants in the future for the purpose of offering skin care goods or services, from using the L'ESTEE trademark or any other Prohibited Term (as defined in the Settlement Agreement and above), and specifically from:

i.     using any Prohibited Term in the following ways:

a.     as or as part of a trademark, service mark, logo, design, product name, brand name, business name, corporate name, trade name, company name, fictitious company name, d/b/a, domain name regardless of generic top level domain ("gTLD") or country code top level domain ("ccTLD") or other identifier;

b.     on products, packaging, containers, jars, business cards, signage, brochures, presentations, proposals, letters, sales materials, invoices, flyers, postcards, letterhead, stationery, business forms, contracts, business cards, marketing materials, websites, social

networking sites, advertising and promotional material, press releases, promotional goods and in any other visual representation regardless of medium;

       c.   on written, printed or visual materials distributed, made available to, or accessible to Defendants' customers, prospective customers or to the public through any medium now existing or hereinafter created; or

       d.   on or in connection with the display, promotion, advertising, marketing, distribution, dissemination, offering for sale, sale, or other provision of any goods, business or services, through any means or any channels of trade;

       ii.   ordering, producing, or having produced on their behalf any products, packaging, order forms, invoices, brochures, promotional materials, marketing materials, advertising materials, stationery or any other printed materials or products of any kind bearing any Prohibited Term;

       iii.   applying to register, registering, seeking registration of, or maintaining a registration in the United States Patent and Trademark Office, any foreign trademark office or any U.S. state trademark office for any Prohibited Term or any mark that includes a Prohibited Term as an element thereof, or requesting that a third party apply to register on Defendants' behalf or for Defendants' use any such mark;

       iv.   authorizing or otherwise consenting to, or assisting in, any third party's use, application to register, or registration of a Prohibited Term for any purpose or in taking any other action that could effect, dilute, harm, or disparage Plaintiff's rights in or use of its ESTEE Trademarks; and

v.     engaging in any other conduct that violates any of the terms of the Settlement Agreement.

B.     Directing that defendant Leung, at her own expense, file an express abandonment with prejudice of the trademark application for L'ESTEE (Application No. 6419194) in the Chinese Trademark Office, and expressly abandon any other pending applications to register L'ESTEE or any other Prohibited Term anywhere in the world.

C.     Directing that each of the Defendants, at its own expense, recall any and all products and other materials from any distributors, retailers, vendors or others to whom it has distributed or sold any products bearing the L'ESTEE trademark or any other Prohibited Term.

D.     Directing that each of the Defendants deliver up to Plaintiff's attorneys for destruction all products, packaging, containers, jars, business cards, signage, brochures, presentations, proposals, letters, sales materials, invoices, flyers, postcards, letterhead, stationery, business forms, contracts, business cards, marketing materials, advertising and promotional material, press releases, promotional goods bearing the L'ESTEE mark or any other Prohibited Term, regardless of medium, that are (i) currently in its possession or under its control or (ii) recalled by Defendants pursuant to any Order of this Court.

E.     Directing that each Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which each has complied with the above.

F.     Awarding to Plaintiff all of its costs and attorneys' fees including investigation fees incurred in connection with the discovery of the breach, obtaining evidence about the breach, taking action relating to the breach, and proving the breach.

G.    Awarding to Estee Lauder all of Defendants' gross profits from the sales on any

goods in violation of the Agreement or $25,000, whichever is greater.

H.    Awarding to Estee Lauder any other relief that the Court deems just and proper

including, without limitation, punitive damages and monetary penalties for breach of the

Settlement Agreement.

Dated:  New York, New York          FROSS ZELNICK LEHRMAN & ZISSU, P.C.
         June 21, 2010

                              By:   _____

                                    Barbara A. Solomon (bsolomon@fzlz.com)
                                    Craig S. Mende (cmende@fzlz.com)
                                    Giselle C. Woo (gwoo@fzlz.com)
                                    866 United Nations Plaza
                                    New York, New York  10017
                                    Tel:  (212) 813-5900

                                    *Attorneys for Plaintiff Estee Lauder Inc.*

EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), effective as of the date of complete execution (the "Effective Date"), is by and between Estee Lauder Inc. ("Estee Lauder"), a New York corporation with its principal place of business at 767 Fifth Avenue, New York, New York 10153 on the one hand and Lynn Leung an individual residing at 20875 Currier Road, Walnut, California 91789, American Personal Care Products Institute a California corporation doing business at 20875 Currier Road, Walnut, California, 91789, Nu Health Product Co. a California corporation doing business at 20875 Currier Road, Walnut, California 91789, and UBF Group, Inc. a California corporation doing business at 20875 Currier Road, Walnut, California 91789 (collectively "Leung") on the other hand.  Each of Estee Lauder and Leung is a "Party" and collectively are the "Parties."

WHEREAS Leung has adopted and is using L'ESTEE as a trademark for various cosmetic items which it advertises and sells over the Internet at the website *www.lestee.com*; and

WHEREAS Leung has filed in the United States Patent and Trademark Office ("USPTO") Application S.N. 77/740788 to register L'ESTEE for goods in International Class 3 (the "Application"); and

WHEREAS Estee Lauder has objected to Leung's use and application to register L'ESTEE; and

WHEREAS the Parties wish to resolve all controversies between them as they relate to Leung's use and adoption of L'ESTEE;

NOW THEREFORE in consideration of the mutual promises and undertakings herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

{F0492981.1 }

1.    Definitions

1.1    "Leung" or "She" shall mean individually and collectively Lynn Leung; American Personal Care Products Institute; Nu Health Product Co.; UBF Group, Inc; any affiliate, division, subsidiary, sister company, parent, predecessor or related company of any of American Personal Care Products Institute, Nu Health Product Co., UBF Group, Inc., or any of their successors or assigns; any officer, principal, owner, manager, managing agent, member, director or majority shareholder of American Personal Care Products Institute, Nu Health Product Co., or UBF Group, Inc.; any company, entity or business owned or controlled in majority part by or under the control of Lynn Leung, American Personal Care Products Institute, Nu Health Product Co., UBF Group, Inc., or any of its owners or members or their successors in interest now or in the future; any company or entity of which Lynn Leung, now or in the future, is an owner, officer, managing agent, director, member, founder, majority shareholder or principal; any company, entity or business related to Lynn Leung or to American Personal Care Products Institute, Nu Health Product Co., UBF Group, Inc., or now or in the future, whether by ownership or management; and any assignee, transferee, successor-in-interest or heir to any of the foregoing.

1.2    "Prohibited Term" means L'ESTEE, ESTEE, L'EST, EST  (regardless of punctuation), the phonetic equivalent of the foregoing and any confusingly similar term, whether used alone, with other words, terms or symbols or as a prefix or suffix and any other mark, name or designation confusingly similar to the ESTEE LAUDER mark.

2.    Representations and Warranties

2.1    Leung provides the following representations and warranties, each of which is a material term of this Agreement:

a.    Other than the Application, She owns no U.S. state, U.S. federal or foreign trademark or service mark applications or registrations for or including any Prohibited Term and no third party is holding any such applications or registrations for Leung or on Leung's behalf or on behalf of any business of Leung;

b.    Other than *www.lestee.com* (the "Domain Name") She owns no domain names, urls, email addresses, or top level domains that consist of or include a Prohibited Term and has not requested a third party to register, use, or maintain any such domain name on Leung's behalf or on behalf of any business of Leung;

c.    She has not filed or caused any third party to file on her behalf any certificate of doing business, incorporation papers, fictitious name statements or similar documents under, or that seek the right to do business under, any Prohibited Term;

d.    She has not contracted to use any Prohibited Term as an Internet keyword in connection with any sponsored ads or taken any action to optimize Internet search results so that a search using any Prohibited Term will yield Leung' website within the first page of results;

e.    She does not advertise or promote products under the L'ESTEE name other than on the website *www.lestee.com* and has not otherwise contracted with any publications regardless of media, marketers, advertisers, directories, websites and social media sites for purposes of advertising or promoting any products under the L'ESTEE name;

f.    She has not entered into any agreements authorizing, licensing, permitting, franchising or otherwise consenting to any third party's use of L'ESTEE for any goods, business or service and has not otherwise promised, pledged or assigned any rights She may have in the L'ESTEE mark, including in the pending Application or the www.lestee.com domain name. to any third party;

[F0492981.1 ]3

     g.    The Agreement does not conflict with any other agreement entered into by or on behalf of Leung;

     h.    Leung does not need to obtain any rights or permissions from any third party to enter this Agreement or undertake the obligations contained herein, is capable of carrying out all of the obligations in this Agreement, and has taken steps to ensure that all of the individuals and entities currently existing that are included in the definition of "Leung" have received notice of this Agreement and the obligations contained herein and will comply with all such obligations;

     i.    There are no actions, suits, legal proceedings or other demands, pending or threatened, against or effecting Leung before any board, court, arbitrator, tribunal or administrative or governmental body that might adversely effect or impair the ability of Leung to perform all of the obligations under this Agreement and entry into this Agreement does not violate any prior agreements entered into by or on behalf of Leung.

     j.    She is the sole owner, director, shareholder of and otherwise fully controls each of American Personal Care Products Institute, Nu Health Product Co. and UBF Group, Inc. and is authorized to execute documents on each of their behalfs.

    2.2    The foregoing representations and warranties serve as the inducement for Estee Lauder to enter into this Agreement.  Should any representation or warranty set forth above prove materially false, Estee Lauder shall be entitled to seek all remedies for breach set forth in Section 7 and to seek all other appropriate legal remedies available to it at law or in equity.  A breach of these representations shall not void any of Leung's obligations under this Agreement.

3.      Obligations of Leung to Cease Use of L'ESTEE

3.1      By no later than 100 days from Leung's execution of this Agreement (the "Phase-Out Period"), Leung shall permanently cease and forever desist from any and all use and any and all planned use of L'ESTEE as a trademark, product name, brand name or otherwise and shall permanently cease and forever desist from all use of any Prohibited Term including L'ESTEE on or in connection with: (a) any goods, business, or services including all cosmetics, skin care products, eye creams and any other products that had been offered for sale at *www.lestee.com*; (b) the provision of any goods, business or services; (c) any commercial purpose; (d) the advertising, marketing, sale, offering for sale, or promotion of any goods, business or services in any media now existing or hereinafter created, and (e) the placement or contracting for placement of any advertising.  Such prohibitions shall be interpreted in their broadest form and shall include, but are not limited to, use of a Prohibited Term:

i.      as or as part of a trademark, service mark, logo, design, product name, brand name, business name, corporate name, trade name, company name, fictitious company name, d/b/a, domain name regardless of generic top level domain ("gTLD") or country code top level domain ("ccTLD) or other identifier;

ii.      on products, packaging, containers, jars, business cards, signage, brochures, presentations, proposals, letters, sales materials, invoices, flyers, postcards, letterhead, stationery, business forms, contracts, business cards, marketing materials, websites, social networking sites, advertising and promotional material, press releases , promotional goods and in any other visual representation regardless of medium;

iii.      as a user name, password, or other identifier on or in connection with any Internet website or social networking site, including, but not limited to, Twitter, FaceBook,

MySpace and LinkedIn or otherwise in any communications including by email, text message or otherwise;

       iv.     in any metatags, source code, programming code, gTLD, email address, user i.d., screen name, server name or any subsequent or similar technologies now existing or hereinafter created.

       v.     on written, printed or visual materials distributed, made available to, or accessible to Leung's customers, prospective customers or to the public through any medium now existing or hereinafter created;

       vi.     in any phone books, yellow pages, business-to-business directories and any other directories, including online directories and directory assistance as well as on or in connection with any websites including social media sites;

       vii.     in or as part of any keyword, AdWord, sponsored link, pop-up ad, banner ad;

       viii.     as a means to generate Internet traffic, whether or not to Leung's website(s), or to otherwise generate sponsored advertisements, to generate Internet search results or to generate pop-up ads;

       ix.     on or in connection with any computer servers or website regardless of content, or to advertise any goods, business or services;

       x.     on or in connection with the display, promotion, advertising, marketing, distribution, dissemination, offering for sale, sale, or other provision of any goods, business or services, through any means or any channels of trade.

       xi.     as part of the phrase "formerly known as" or any similar term.

3.2     As of the Effective Date, Leung shall permanently cease and forever desist from (i) ordering, producing, or having produced on its behalf any products, packaging, order forms, invoices, brochures, promotional materials, marketing materials, advertising materials, stationery and any other printed materials or products of any kind that include or bear a Prohibited Term; (ii) contracting for, planning or placing any new advertising or marketing in any media that will include a Prohibited Term, (iii) renewing any listings in any directories, including online directories and directory assistance, websites, social media sites, or other publications regardless of media under any name that includes a Prohibited Term.

3.3     By no later than the end of the Phase-Out Period Leung shall (i) file with the appropriate entities all documents required to change any business name that includes L'Estee or Lestee to a name that does not include a Prohibited Term and to otherwise change the name on all materials provided or visible to the public or used in connection with any business or the advertising, promotion, or marketing thereof.  Copies of all documents filed with any state or local governmental agency relating to the change of name, as well as copies of all necessary amendments of any business documents, including articles of incorporation to reflect the new name shall be provided to Estee Lauder contemporaneously with their filing; (ii) use best efforts to instruct directory assistance, Internet directories, websites on which it advertises or that it knows advertises or promotes its goods and all other entities of which Leung is aware who maintain any lists or materials in which the L'Estee name appears, regardless of media, to delete all references to L'Estee and any products sold under the L'ESTEE mark; (iii) cease and permanently refrain from using the *www.lestee.com* domain name or any other domain name that includes a Prohibited Term and ensure that any content from that site that has been migrated to

another site using a url that does not include a Prohibited Term has no reference to any Prohibited Term including in the content, source code, metatags and metadata..

      3.4     During the Phase-Out Period, other than to Estee Lauder, Leung shall not transfer, assign, license, franchise, sell, or authorize any third party to use the name L'ESTEE or the *www.lestee.com* domain name.

      3.5     By no later than 110 days after Leung's execution of this Agreement,  Leung shall destroy all remaining inventory in Leung's possession, custody or control of any products, packaging, jars, containers, labels, business materials, stationery, business cards, signage, brochures, presentations, proposals, letters, sales materials, invoices, flyers, postcards, letterhead, business stationery, business forms, business cards, marketing materials, advertising and promotional material, promotional goods, or other materials bearing the Prohibited.

      3.6     Leung shall not use or claim ownership in or to any name, mark or other identifier that includes a Prohibited Term, including as a trademark, brand name, product name, business name, trade name, corporate name, d/b/a, fictitious name.

      3.7     Leung shall not purchase or use any form of advertising, including keywords or adwords in Internet advertising, which incorporate or use a Prohibited Term and shall, when purchasing Internet advertising using keywords, adwords or the like require the activation of the Prohibited Term as a negative keyword, negative adword or excluded word in any Internet advertising purchased or used.  For purposes of this requirement, a negative keyword, negative adword or excluded word shall mean a special kind of advertising keyword matching option that allows an advertiser to prevent its advertisement from appearing when the excluded words or negative keywords are part of an Internet user's search or search string.

3.8    Leung shall ensure that no form of advertising that She pays for or that She places or contracts for on the Internet for any goods or services, including but not limited to pop up ads, banner ads, linked ads or otherwise, appears in response to a search using the Prohibited Term either as a keyword search or as a search term.  This prohibition shall not apply to organic search results provided Leung does not pay for placement or optimization of such results.

4.    Recognition of Estee Lauder's Rights

4.1    Leung shall not authorize or otherwise consent to, or assist in, any third party's use, application to register, or registration of a Prohibited Term for any purpose or in taking any other action that could effect, dilute, harm, or disparage Estee Lauder's rights in or use of its ESTEE LAUDER or ESTEE marks.

5.    Trademarks and Domain Names

5.1    Within 5 business days following the execution of this Agreement by Leung, Leung shall file an abandonment with prejudice of the Application in the USPTO.  Leung shall serve a copy of the abandonment on counsel for Estee Lauder contemporaneously with the filing of the same.

5.2    Leung shall not apply to register, register, seek registration of, or maintain a registration in the United States Patent and Trademark Office, any foreign trademark office or any U.S. state trademark office for any Prohibited Mark or any mark that includes a Prohibited Mark as an element thereof for any goods or services and shall not request that a third party apply to register on Leung's behalf or for Leung's use any such mark.

5.3    No later than 100 days following execution of this Agreement by Leung, Leung shall take all steps necessary for the transfer of ownership of the url *www.lestee.com* to Estee Lauder.  Leung shall timely unlock the Domain Name and provide to Estee Lauder all necessary

authorization codes, user names and passwords to allow for the transfer of the Domain Name, shall timely comply with all electronic or other requests for the transfer of the Domain Name, and shall execute any documents necessary for said transfer. Leung shall take all steps necessary to maintain the Domain Name, including renewing the same, to ensure that it maintains control and ownership over the Domain Name until it is transferred to Estee Lauder. While maintaining the registration of the Domain Name pending transfer, Leung shall not change the registrar without notice to and approval from Estee Lauder. To the extent that the administrative contact for the Domain Names changes prior to the date for transfer of the url, Leung shall advise Estee Lauder.

5.4     Leung shall not apply to register, register, use, maintain or request any third party to register or maintain on its behalf or use a domain name that includes a Prohibited Mark, regardless of ccTLD or gTLD and shall not otherwise use a Prohibited Mark as a gTLD.

6.     Proof of Compliance

6.1     Leung shall provide to Estee Lauder by no later than 120 days after Leung's execution of the Agreement, a sworn undertaking attesting to (a) the cessation of all use of any Prohibited Term and the compliance with the requirements of Section 3, including all of it subparts, by all entities identified in the definition of "Leung"; (b) Leung's destruction of all materials bearing a Prohibited Term as required by Section 3.5 above; and (c) Leung's cessation of use and transfer of the url *www.lestee.com*.

7.     Breach

7.1     Should Leung breach any of the representations or warranties provided herein or otherwise violate any of the terms of this Agreement, Estee Lauder shall be entitled in any action brought to enforce the Agreement or to redress an alleged material breach of this Agreement to a

temporary restraining order, preliminary injunction and permanent injunction prohibiting all conduct that is in breach of the Agreement; to payment of all of its costs and attorneys' fees including investigation fees incurred in connection with the discovery of the breach, obtaining evidence about the breach, taking action relating to the breach, and proving any breach; Leung's gross profits from the sales on any goods in violation of this Agreement or $25,000 whichever is greater; and any other relief that the Court deems appropriate including, without limitation, monetary penalties for breach of the Agreement, as well as for violations of substantive law. Leung expressly waives any claims challenging the award of liquidated damages in lieu of profits and further acknowledges that the amount set forth is reasonable under the circumstance. A breach of this Agreement by Leung shall not release Leung from any of its obligations under this Agreement which shall remain in full force and effect and any violation by Leung of any of its obligations under this Agreement shall not act to terminate or rescind this Agreement or any of Leung's obligations under this Agreement unless so requested by Estee Lauder.

8. <u>Notices</u>

8.1    All notices, requests, demands, submissions or other communications required or otherwise contemplated to be given under this Agreement shall be in writing and shall be provided by one or more of the following means and shall be deemed to have been duly given: (a) if delivered personally, when received; (b) if transmitted by email on the day of the receipt of the transmission; (c) if delivered by courier service, overnight mail or express mail on the second business day following the day of deposit.  Notices shall be sent to the following:

For Estee Lauder:
Lido L. Puccini, Esq.
Sr. Vice President and Deputy General
Counsel
The Estee Lauder Companies Inc.
767 Fifth Avenue
New York, New York 10153
Email:lpuccini@estee.com

For Leung:
Charles Pok, Esq.
Law Office of Charles Pok & Associates
820 S. Garfield Avenue, Ste 101
Alhambra, CA 91801
Email: charlespok@aol.com

Any Party may change the address, email address, or individual to whom communications are to be sent by specifying such changes in a written notice delivered in accordance with this Section.

9.    Release

9.1    Each of Estee Lauder and Leung hereby release and forever discharge the other from all actions, causes of action, claims, suits, debts, damages, judgments and demands whatsoever, whether matured or not, whether in law or in equity and whether now known or unknown, that such releasing Party now has or may have had, on behalf of itself or any other person or entity, at any time prior to and including the date of this Agreement arising out of or related solely to the subject matter of this Agreement. The release from Estee Lauder is conditioned on and subject to Leung's compliance with all terms of this Agreement. Further, in granting this release, Estee Lauder is relying upon Leung's representations and warranties contained herein. In the event any representation proves materially false, the release granted by Estee Lauder to Leung herein shall be void and of no effect. Nothing in this release is intended to or shall release any of the releasing Parties from their obligations under this Agreement, and nothing in this release is intended to or shall release the Parties from any claims arising out of their breach of any of obligations arising under this Agreement.

10.    Confidentiality

10.1    This Agreement and the negotiations surrounding the same are and shall remain confidential. Neither of the Parties, nor anyone acting on their behalf or at their direction, shall

publicize, disclose or communicate the terms of this Agreement without the other Party's prior

written consent except that the Parties may disclose this Agreement (a) to their attorneys,

business partners, management, board members, financial advisers and individuals within their

organizations who have a reason to know or would be expected to know of the terms set forth

herein and then only on the condition that any such individual is first apprised of this

confidentiality provision and agrees to be bound thereby; and (b) to the extent required by

applicable law or legal process.  Prior to disclosing any of the terms of this Agreement pursuant

to applicable law or legal process, the disclosing Party shall provide notice thereof to the non-

disclosing Party sufficiently in advance of the disclosure to allow the non-disclosing Party to

seek a protective order or otherwise to take appropriate action to preserve the confidentiality of

the terms of this Agreement.  In such circumstances, the disclosing Party shall produce or

disclose the terms of this Agreement pursuant to the highest level of confidentiality available

under law or available under the legal proceeding in which such information is being disclosed.

11.    Choice of Law

     11.1    This Agreement shall be governed by the laws of the state of New York

applicable to contracts entered into and performed entirely within the State and without regard to

New York's choice of law rules.  Any legal proceedings to interpret, construe or enforce any of

the terms or provisions of this Agreement or for redress for any breach or alleged breach of the

provisions hereof or for any claims that arise out of the misuse of the L'ESTEE mark or any

other Prohibited Term, including claims for trademark infringement or unfair competition shall

be brought and maintained solely and exclusively in the United States District Court for the

Southern District of New York.  Leung hereby consents to the jurisdiction of such Court and

waives all objections relating to the jurisdiction of said Court including claims for lack of

personal jurisdiction, lack of subject matter jurisdiction, or that the Court is an inconvenient or improper forum.

12.    Scope of the Agreement

12.1    This Agreement and all obligations contained herein are perpetual in duration and worldwide in scope.

13.    Relationship of Parties

13.1    Nothing herein shall be construed to place the Parties in a relationship of partners, joint venturers, principal and agent, or licensor and licensee, and no Party shall have the power to obligate or bind the other Party in any manner whatsoever except as specifically provided for herein.

14.    Interpretation

14.1    The terms of this Agreement have been negotiated at arms-length with all Parties and if requested their counsel having input into the specific terms. As a result, the rule of "interpretation against the draftsman" shall not apply in any dispute over the interpretation of the terms of this Agreement. The section headings are for convenience and reference only and in no way define, limit, describe or effect the scope or intent of any provision hereof.

15.    Severability

15.1    In the event that any provision hereof is held by a Court of competent jurisdiction to be unenforceable or invalid, the validity and enforceability of the remaining provisions of this Agreement shall not be adversely affected. For any provision deemed invalid or unenforceable, the Parties agree to the substitution of a new provision as like to the original in terms of purpose and effect as may be permitted by law.

16.    Persons and Entities Bound

16.1    This Agreement and all obligations contained herein shall be binding upon and inure to the benefit of Leung and Estee Lauder each of their successors, transferees and lawful assigns.  It is the intent of the Parties that this Agreement be binding and effective without regard to future events.  The Parties agree that no change in law or fact (and no current or future error in a Party's understanding of the law or fact) shall affect the Parties' respective obligations or rights under this Agreement, or be a basis not to perform hereunder or to attack or seek to modify, void or terminate this Agreement or any provision herein.

17.    Merger Clause

17.1    This Agreement and its exhibits constitutes the entire agreement and understanding among the Parties and supersedes all prior and contemporaneous understandings and agreements of the Parties with respect to the subject matter hereof.

18.    Modification and Waiver

18.1    The Agreement may be modified only by a written document signed by all of the Parties.  The failure of a Party to insist upon strict adherence to any term of this Agreement on any occasion shall not be construed as a waiver and shall not deprive that Party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.  Any written waiver of any breach of this Agreement shall not operate or be construed as a waiver of any other similar or prior or subsequent breach of this Agreement.

19.    Authorization To Sign

19.1    Each of the signatories to this Agreement represents and warrants that he or she has the full right, power and authority to execute this Agreement and to bind the Party for which he or she is signing and that each Party has the power and authority to perform its obligations

under this Agreement.  Each Party warrants that it has read this Agreement, understands the terms and conditions hereof and has had a full opportunity to consult with counsel in respect thereof and that it entered into this Agreement without duress or coercion as its voluntary act and deed.

20.   Advice of Counsel

20.1   Each Party has carefully reviewed this Agreement, understands its terms, sought legal advice with respect to this Agreement, and has relied wholly on its own judgment and knowledge and has not been influenced to any extent whatsoever in making this Agreement by any representations or statements made by any other Party or anyone acting on behalf of any other Party.  The Parties acknowledge, agree and confirm that they have not executed the Agreement in reliance on any promise, representation or warranty not contained herein.

21.   Miscellaneous

21.1   The Parties shall not authorize, aid, abet or assist, either directly or indirectly, any third party or non-signatory to this Agreement in taking any action or cause or assist any third parties to take action inconsistent with the terms of this Agreement or to take action that, if performed by any one of the Parties, would constitute a violation of this Agreement.

21.2   Each Party shall execute such further documents as may be requested by the other to effectuate the intent of this Agreement without further consideration.

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have hereunto set their hand as of the date below.

Dated:   09/02/2009
         Walnut, California

LYNN LEUNG

By:_____

Dated:  09/02/2009
       Walnut, California

AMERICAL PERSONAL CARE PRODUCTS
INSTITUTE

By:_____
Name: Lynn Leung
Title:  President


Dated:  09/02/2009
       Walnut, California

NU HEALTH PRODUCTS CO.

By:_____
Name: Lynn Leung
Title:  President


Dated:  09/02/2009
       Walnut, California

UBF GROUP INC..

By:_____
Name: Lynn Leung
Title:  President


Dated:  October 27, 2009
       New York, New York

ESTEE LAUDER INC.

By:_____
Name:
Title:

EXHIBIT B

# *L'estee*

## Deep Clean Detoxifying Oxygenation Mask

**Cleansed**
the skin's impurities,
improves skin's
suppleness and elasticity,
leaves skin feeling fresh
and smooth.

**Dermatologist Developed**
**All Skin Types**

6 masks x 30ml

# L'estee

## Collagen 100%

## Intensive Whitening Mask

**Dermatologist Developed**
**All Skin Types**

**6 masks x 30ml**



**ANTI-WRINKLE**
Moisturizing Mask

Dermatologist Developed
All Skin Types

6 masks x 30ml

*L'estee*



Whitening Enzyme
**Mask**

Advanced lightening mask
to gradually diminish darkly pigmented skin areas
and age spots, gives your skin a refreshing and
even toned appearance

Dermatologist Developed
All Skin Types
6 masks x 30ml





STRAWBERRY

# POLYPHENOLS

Nourish Repair Mask

STRAWBERRY
Polyphenols

Dermatologist Developed
All Skin Types

6 masks x 30ml







# CELL DEFENSER
## BETTER THAN
## BOTOX[©]

**SKIN RENEWING ESSENCE**
**WRINKLES ERASER &**
**CELL DEFENSE COMBINATION**

50ML(1.7FL.OZ)

EXHIBIT C

## L'ESTEE
### ULTR FIRMING EYE CREAM
### BIO-PERFORMANCE

Protein-rich, Biodynamic penetration new technology can deeply nourishes, moisturizes
And delicate your skin around the eyes. Creates immediate and visible firming
And toning benefits. Minimize the appearance of fine lines and puffiness, dramatically
Reduces wrinkles and dark circles.

Applying morning and evening , delicately on throughly clean eye contour area or
Desired facial areas using fingertips with a light tapping movement.

## 億能量眼部修護精華

本産品注入億能量 BCC 生物活力高效配方, 能迅速滲透至眼部肌
膚细胞, 大大促进肌膚细胞的修復及再生能力, 增强眼部嫩肌彈性,
並深層滋潤及高效保濕, 消除细紋, 效果明顯持久, 令双眼綻放前所
未有的神采.
使用方法: 早晚潔净眼部肌膚後, 用指尖取適量輕按與眼部四周.

## L'ESTEE
### ULTRA CREMA HIDRATANTE PARA LOS OJOS
### RENDIMIENTO DINAMICO

**DINAMICA PENETRACION Y NUEVA TECNOLOGIA QUE PUEDE
PROFUNDAMENTE NUTRIR E HIDRATAR LA PIEL DELICADA
ALREDEDOR DE LOS OJOS CREANDO INMEDIATO Y VISIBLE TONO
MINIMISANDO LA APARENCIA DE UNA FINA LINEA Y HINCHASON
REDUCIENDO CIRCULOS Y GRANDES ARRUGAS.**

**APLICARSE EN LAS MANANAS Y NOCHES CON DELICADESA AL REDEDOR DE LOS
OJOS O EN EL AREA QUE PREFIERA USANDO LA PUNTA DE LOS DEDOS TROTANDO
CON UN LIJERO MOVIMIENTO.**



# L'estee

## NIGHT MASK

Innovative Perfect Night Mask.
Leaves Skin Nourished Overnight.
☀ Shinier and prettier skin
the next morning!

L'estee

NIGHT MASK

NIGHT REPAIRING TREATMENT
MOISTURIZING
RECOVERING&TIGHTENING

Helps relax, repair and nourish skin throughout the night.
Keeps skin moisturized, reduces dry and fine lines.

CONTAIN: Natural Vitamin C, Strawberry Polyphenol Factor, Wheat Germo
Vitamin A, Aloe Vera, Citrus Extract, Grape Seed Extract



EXHIBIT D

# Detail information of Trademark

| | | | | | |
|---|---|---|---|---|---|
| Registration No./ Application No. | 6419194 | International Classification No. | 3 | Application Date | 2007-12-05 |

| | | | |
|---|---|---|---|
| Name of Registrant(Chinese) | 梁林131592707 | Address of Registrant(Chinese) | 美国加州核桃市凯瑞亚街20875 |
| Name of Registrant(English) | LYNNLEUNG | Address of Registrant(English) | 20875 CURRIER ROAD,WALNUT,CA 91789,U.S.A. |

| Trademark Image |  | List of Goods/Services | 化妆品;研磨材料;香;浴液;动物用化妆品;口香水;上光剂;抛光制剂;香料;牙膏;Refer to details … | Similar Group | 0301 0303 0304 0305 0306 0307 0308 0309 |
|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| No. of Preliminary Publication Trademark Gazette | 1212 | No. of Registration Publication Trademark Gazette | |
| Date of Preliminary Publication | 2010-04-20 | Date of Registration Publication | |
| Effective Period of Exclusive Right | // | Year | |
| Date of Subsequent Designation | | International Registration Date | |
| Priority Date | 无 | Agent Name | 北京中北知识产权代理有限公司 |
| Color Claimed | | TrademarkType | 普通商标 |
| Jointly Owned Trademark | 否 | Remark | |
| Trademark Process | 转让 | | |

Previous Page   Next Page

This is for reference only without any legal effect and shall be used after verification.

Print    Close